# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| FREDERICK C. CASHNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:14-CV-1641 |
| | ) | |
| JOHN J. WIDUP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court is a complaint filed by Frederick C. Cashner, a *pro se* prisoner, pursuant to 42 U.S.C. § 1983. (DE #1.) For the reasons set forth below, the Court: (1) **GRANTS** the plaintiff leave to proceed against Dr. Nadir Al-Shami, Nurse Kimberly White, and Warden John J. Widup in their individual capacities for monetary damages for denying him proper medical treatment for chronic headaches; (2) **DISMISSES** David E. Lain, Ronald Gaydos, and Advanced Correctional Healthcare as defendants; (3) **DISMISSES** any and all other claims contained in the complaint; (4) **DIRECTS** the United States Marshals Service to effect service on Dr. Nadir Al-Shami, Nurse Kimberly White, and Warden John J. Widup pursuant to 28 U.S.C. § 1915(d); and (5) **ORDERS** Dr. Nadir Al-Shami, Nurse Kimberly White, and Warden John J. Widup to respond, as provided for in the Federal Rules of Civil Procedure, only to the claim for which the plaintiff has been granted leave to proceed in this screening

order.


BACKGROUND

Frederick C. Cashner, a *pro se* prisoner, brought this action in June 2014. (DE #1.) He is presently in the custody of the Indiana Department of Correction ("IDOC") serving a criminal sentence. He alleges that he was denied proper medical care as a pretrial detainee at the Porter County Jail between March 2011 to February 2013. He claims that he received treatment for chronic headaches, but that the treatment provided was not effective. In May 2012, he met with the head nurse, Kim White; a jail physician named Dr. Hamstrung (first name unknown); and a jail officer. During this meeting the doctor recommended that Cashner see a specialist. Nurse White made an appointment with a neurologist in June 2012, but for unknown reasons Cashner was not transported to the appointment on the scheduled date. Another appointment was made for August 2012, and this time he was taken to see the neurologist. She prescribed two different medications and ordered blood work and a magnetic resonance imaging test ("MRI") to further diagnose the problem.

In September, Cashner was seen by Nurse White, who drew blood for the testing recommended by the neurologist. While he was in the office, he encountered Dr. Nadir Al-Shami, another jail physician, who, in Cashner's words, "started ranting, and stated

2

that he had traveled the world treating patients and he was a better doctor than any neurologist, and wasn't going to let any other doctor tell him how to treat a patient of his." (DE #1 at 3.) Dr. Al-Shami allegedly canceled all of Cashner's prescriptions and the tests that had been ordered, and told him he would not be going back to see the neurologist. He also told Cashner he thought the headaches were "all in [his] head," and stated that the jail would not be paying for an MRI because this was very expensive. Cashner later met with Warden John J. Widup to discuss the matter, and the warden allegedly deferred to Dr. Al-Shami's statement that the jail would not pay for him to undergo an MRI. He also suggested that the headaches were caused by Cashner's failure to take his medication.

Shortly thereafter, Cashner raised the matter with the state trial judge presiding over his criminal case, and he claims the judge ordered him to be taken for a follow-up appointment with the neurologist. Nurse White then scheduled an appointment, but Cashner claims she scheduled it as an initial appointment rather than a follow-up, so he was required to wait another three months to see the neurologist. He claims the neurologist ordered testing and prescribed medications for a second time, and ordered another follow-up appointment in February 2013. In January 2013 he was convicted pursuant to a plea agreement. He claims that the testing ordered by the neurologist was never conducted, and the follow-up

3

appointment canceled. On February 25, 2013, he was transferred to the custody of the IDOC, where he remains to date.

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. In determining whether the complaint states a claim, the court applies the same standard as when deciding a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. Thus, the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). The court must bear in mind, however, that "[a] document

filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Because Cashner was a pretrial detainee when these events occurred, the Fourteenth rather than the Eighth Amendment applies. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are functionally equivalent, however, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id*. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjecting component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to

5

prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Although the Eighth Amendment does not entitle an inmate to demand a specific form of treatment, prison medical staff cannot simply continue with a course of treatment that is known to be ineffective. *Greeno*, 414 F.3d at 654-55. Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Giving Cashner the inferences to which he is entitled, he has alleged a serious medical need, specifically, chronic headaches that caused him significant pain and suffering, and for which a neurologist prescribed medication. On the subjective prong, he alleges that Dr. Al-Shami and Warden Widup were both dismissive of his medical problem and refused to provide him with effective treatment and testing, instead blaming the problem on him. Giving him the inferences to which he is entitled at this stage, he has

6

alleged enough to proceed further against these defendants.

Cashner also sues Nurse White. He attributes the various delays he experienced in seeing the neurologist to her, asserting that she did not act promptly in scheduling appointments or take steps to ensure he was transported for the first scheduled appointment. Although further factual development may show that Nurse White acted properly and/or that the delays occurred for reasons beyond her control, giving Cashner the inferences to which he is entitled, he has alleged enough to proceed further against Nurse White.[1]

He also sues Porter County Sheriff David Lain, as well as Assistant Warden Ronald Gaydos. He appears to believe these defendants should be held responsible for the failure of jail staff to transport him to his first appointment with the neurologist. He also believes the sheriff should be held responsible for the warden's decision not to approve an MRI. However, "Section 1983 does not establish a system of vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). These officials cannot be held liable for the actions of other jail staff simply because they oversee operations at the jail. Nor can they be held liable simply because Cashner may have notified them about what

---

[1] To the extent he is attempting to assert a state law medical malpractice claim against Nurse White, Indiana law requires a plaintiff to seek and obtain an opinion from a medical malpractice review panel before bringing a medical malpractice claim. IND. CODE § 34-18-8-4. The complaint makes no mention of having obtained such an opinion.

7

occurred after the fact. As the U.S. Court of Appeals for the Seventh Circuit has explained:

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

*Id.* at 595. Here, the complaint does not plausibly allege that the sheriff or assistant warden were personally involved in the medical decisions that were made, or that they were personally involved in the scheduling problems that occurred related to his appointments. Accordingly, they will be dismissed as defendants.

Finally, Cashner sues Advanced Correctional Healthcare ("ACH"), a private company that provides medical staff at the jail. It appears he is trying to hold the company liable because it employees Dr. Al-Shami and Nurse White. However, as stated above, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.").

8

Thus, ACH cannot be held liable simply because it employs the medical staff involved in these events.

A private company performing a governmental function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). Although Cashner states in very general terms that ACH had an unconstitutional policy, merely putting a few words on paper is insufficient to state a plausible claim. *Swanson*, 614 F.3d at 403. The complaint does not provide a plausible basis to infer that Cashner's injury was caused by an official practice or policy. Instead, he alleges that Dr. Al-Shami became upset that an outside doctor was trying to influence his treatment decisions, and refused to provide any of the recommended treatment out of spite. He further claims Dr. Al-Shami believed he was malingering or making up his symptoms, and therefore would not approve an expensive diagnostic test. Cashner does not allege that the doctor acted pursuant to an official policy, but rather, that he was unprofessional and inappropriately dismissive of his medical problem. Accordingly, Cashner has not alleged a plausible claim against ACH, and this defendant will be dismissed.

CONCLUSION

9

For the reasons set forth above, the Court:

(1) **GRANTS** the plaintiff leave to proceed against Dr. Nadir Al-Shami, Nurse Kimberly White, and Warden John J. Widup in their individual capacities for monetary damages for denying him proper medical treatment for chronic headaches;

(2) **DISMISSES** David E. Lain, Ronald Gaydos, and Advanced Correctional Healthcare as defendants;

(3) **DISMISSES** any and all other claims contained in the complaint;

(4) **DIRECTS** the United States Marshals Service to effect service on Dr. Nadir Al-Shami, Nurse Kimberly White, and Warden John J. Widup pursuant to 28 U.S.C. § 1915(d); and

(5) **ORDERS** Dr. Nadir Al-Shami, Nurse Kimberly White, and Warden John J. Widup to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE, only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**DATED: July 30, 2014**               /s/ RUDY LOZANO, Judge
                                       **United States District Court**